In the Matter of Lowell Louis LEHNER, Bankrupt.

HOUSEHOLD FINANCE CORPORATION, Petitioner on Review,

v.

Dolores B. KOPEL, Trustee in Bankruptcy, Respondent on Review.

No. 67-B-3931.

United States District Court D. Colorado.

Aug. 28, 1969.

Herbert W. DeLaney, Jr., and Davis & Michael, by David L. Michael, Denver, Colo., for petitioner on review.

Dolores B. Kopel, Denver, Colo., Trustee in Bankruptcy, pro se.

MEMORANDUM OPINION
AND ORDER

WILLIAM E. DOYLE, District Judge.

Household Finance Corporation has petitioned this Court to review the Ref-

eree's order of March 26, 1969 that petitioner's security interest in certain personal property of the bankrupt Lowell Louis Lehner was invalid.

On August 18, 1967, the petitioner made a loan to the bankrupt of $827.33 which was secured by a tapedeck and speaker and a 21 inch portable television. The financing statement was properly recorded on August 24, 1967, and described the collateral as "consumer goods." On November 6, 1967, Lehner filed a petition for voluntary bankruptcy. During the course of the bankruptcy proceedings Household Finance applied for leave to foreclose on its security interest. The trustee answered, claiming that the lien asserted by Household Finance was invalid because "the financing statement does not indicate the type or describe the items of collateral as required by 1965 CRS 155–9–402(1)." The Referee found that the term "consumer goods" did not sufficiently describe the type or items of collateral and held that the security interest was void.

■■ Section 70(c) of the Bankruptcy Act confers on the trustee "the status of a creditor then holding a lien by legal or equitable proceedings at the time of bankruptcy on all property on which a creditor of the bankrupt could have obtained such a lien at bankruptcy." 4A Collier, Bankruptcy ¶ 70.45, at 558 (14th ed. 1969). This status gives the trustee the ability to challenge the validity of prior transfers, liens or encumbrances so that property not subject to perfected security interests may be included in the bankrupt's estate. The question of whether the security interest of Household Finance in the present case was perfected at the time of bankruptcy must be determined under the applicable state law of secured transactions—the Colorado Uniform Commercial Code.

The Colorado Uniform Commercial Code states that "a financing statement must be filed to perfect all security interests * * *." with some exceptions not applicable to the case at bar. C.R.S. 1963, § 155–9–302(1). The filing of a financing statement perfects the security interest only if the statement substantially complies with the requirements of § 155–9–402(1) which provides:

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor *and contains a statement indicating the types, or describing the items, of collateral.* (Emphasis added.)

Section 155–9–402 adopts a system of notice filing designed to replace the rigid description requirements contained in the chattel mortgage and conditional sales acts of many states. The Official Comment to § 155–9–402 states:

This Section adopts the system of "notice filing" which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

While the Comment states that the financing statement is sufficient if it puts potential creditors on inquiry notice, the statutory language of § 155–9–402 clearly requires some specificity of description—the financing statement must indicate the *type* or describe the *item* of collateral.

The cases which have considered the degree of specificity required by § 9–402 of the Uniform Commercial Code involved financing statements which were more specific than the one presently before this Court. For example, in In re Drane, 202 F.Supp. 221 (W.D.Ky. 1962), the district court held that a financing statement which described collateral as "1—2 pc. living room suit,

wine; 1—5 pc. chrome dinette set, yellow; 1—3 pc. panel bedroom suite, lime oak, matt. & spgs." was sufficient to meet the requirements of Article 9 of the Code. In National Cash Register Co. v. Firestone & Co., 346 Mass. 255, 191 N.E. 2d 471 (1963), the Massachusetts Supreme Court held that "all contents of luncheonette" was a sufficient description under the Code to subject both present and future contents of the luncheonette to the creditor's lien. *But see* Mammoth Cave Production Credit Assn. v. York, 429 S.W.2d 26 (Ky.Ct.App.1968) ("All farm equipment" held insufficient description under the Code).

Commentaries on the Uniform Commercial Code suggest that § 9–402 requires that the financing statement be at least as specific in its description of collateral as those in *Drane* and *National Cash Register, supra.* Professor Gilmore has indicated that:

A filed financing statement must describe the types of collateral in which the secured party claims, or may claim, an interest. The description by "types" is understood to require a certain degree of specificity: it would not be sufficient for the notice to claim "all the debtor's property." Thus if a secured party is financing a dealer's inventory which includes washing machines, television sets, phonographs, radios and refrigerators, it would be advisable for the notice to list each of these "types" of collateral separately. Gilmore, Security Interests in Personal Property § 15.3, at 477 (1965).

Professor Honnold also interprets § 9–402 as requiring more than a mere statement that the collateral consists of inventory, equipment, or consumer goods:

To perform its function of public notice the financing statement must (9–402) give several items of information not required in the security agreement (e. g. the address of the secured party and the debtor); on the other hand the goods need not be "described"; UCC 9–402(1) provides that "indicating the *types* will suffice (e. g. "Motor vehicles.") J. Honnold, Law of Sales and Sales Financing 507 (University Casebook Series 1968).

One case has held that the requirements of 9–402 are satisfied by providing in the financing statement that the collateral consists of "Inventory and Accounts Receivable." In re Platt, 257 F. Supp. 478 (E.D.Pa.1966). There, however, the court relied on the fact of commercial policy applicable to inventory financing which discourages the filing of new statements each time new inventory and accounts receivable are acquired—a consideration which is not present in an individual loan case like the present one.

■ We have carefully considered whether C.R.S.1963, § 155–9–110, as amended, sanctions the kind of description which we find here.[1] This amended section provides for specificity in the security agreement. The section originally passed apparently required specificity in both the security agreement and the financing statement in that it laid down a requirement that described personal property be identified and itemized. It would appear that the legislature, in amending § 110, intended to demand this specificity only in the security agreement. Therefore, the sufficiency of the description in the financing statement is

---

[1]. It provides:
For the purposes of this article, any description of personal property is sufficient if it specifically identifies and itemizes *in the security agreement* what is described as to consumer goods, and whether or not it is specific if it reasonably identifies what is described as to all other personal property.

The former section provides:
For the purposes of this article, any description of personal property is sufficient if it specifically identifies and itemizes what is described as to consumer goods, and whether or not it is specific if it reasonably identifies what is described as to all other personal property.

to be determined by § 155–9–402(1). The use of the term "consumer goods" fails, as we have shown, to satisfy this section. It is too broad, general and meaningless to fulfill the demand of § 9–402(1) that the financing statement at least reveal "the types."

The Code should, of course, be interpreted in light of the actualities of commercial transactions. We do not say that the financing statement which covers inventory or accounts receivable may not generally describe collateral so as to avoid continuous refiling if it describes the types. Here, however, the description is insufficient in that it neither specifies the types or the items. Where as here the collateral is used by the owner, it would not seem to be an undue hardship to require the lender to designate in more meaningful terms.

It follows that the order of the Referee was correct, and this judgment is affirmed.